**Luther D. WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–97–02195–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 2, 1999.

Ordered Published Feb. 24, 2000.

William R. Barr, Dallas, for Appellant.

Wendy Koster, Asst. Dist. Atty., Dallas, for State.

Before Justices LAGARDE, JAMES, and ROACH.

## OPINION

LAGARDE, Justice.

Luther D. Wilson appeals his conviction for aggravated sexual assault. After the jury found appellant guilty, the trial court sentenced appellant to life imprisonment. Appellant brings six points of error contending: (a) the evidence was insufficient to support an unadjudicated extraneous offense offered at the punishment phase; (b) appellant was denied effective assistance of counsel at trial; and (c) appellant was deprived of his constitutional rights to due process and due course of law. We overrule the points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

On April 21, 1996, Cricket Cooper was washing her car when a man approached her. The man pushed Cooper into her car. The man hit her and told her to "shut up" or he would kill her. Cooper kept screaming and struggling and honking the horn as the man continued to hit her and remove her clothes. The man kissed Cooper's mouth and breast and then put his tongue in her vagina. He then pulled down his pants and was trying to insert his penis in Cooper's vagina when he stopped, pulled up his pants, walked back to his car, and drove away. Cooper tried to memorize the license number of the car driven by her assailant and tried to write it down when she found pencil and paper, but the number she wrote down was to a car registered to a man in Detroit, Texas. However, that number was similar to the license number of appellant's car.[1] Cooper found a towel in her car, which appellant's wife identified as belonging to her and appellant. Cooper identified appellant as her assailant.

During the punishment phase, Sheila Trujillo testified that on the night of June 10, 1995 she had returned home from an evening with friends. She was removing her makeup when a man grabbed her from behind and threw a sweater over her head. The man said, "Don't make a sound or I'll

---

1. Cooper wrote down the number "SCP49C." The license number of appellant's car was "SBC94P."

kill you." Trujillo told the man she could not have sex with him; Trujillo testified that she was recovering from surgery for "female cancer." The man forced her onto the bed and was removing her clothes when Trujillo's roommate arrived, knocked on the door, and asked Trujillo if she was "okay." Trujillo screamed, "he's trying to rape me, make him stop, he's trying to rape me." The man ran out of the apartment past Trujillo's roommate and her boyfriend, Alex Orozco. Orozco chased the assailant and tackled him, but the man got up and continued running. When they reached the corner, the man stopped, turned around, pulled up his shirt, and told Orozco he was going to shoot him. Orozco got a "good look" at the man and, not wanting to get shot, stopped chasing him. Orozco identified appellant as the man whom he chased out of the apartment and down the street.

## PUNISHMENT EVIDENCE

■ In his first point of error, appellant contends the trial court erred in denying appellant's motion to disregard the evidence of the unadjudicated extraneous offense because the evidence was factually insufficient. After the State rested in the punishment phase, appellant asked "the Court not to consider the testimony heard in regards [sic] to the Trujillo incident in that we feel the State has failed to meet its burden...." The trial court denied this request.[2]

■ Under article 37.07, section 3(a) of the code of criminal procedure, the trial court may admit evidence of an extraneous crime or bad act that the trial court determines has been shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.2000). In *Mitchell v. State*, 931 S.W.2d 950 (Tex.Crim.App.1996), the court of criminal appeals clarified the roles of the trial court and the factfinder in the admission and consideration of unadjudicated extraneous offense evidence at the punishment phase. The trial court determines the admissibility of the unadjudicated extraneous offense evidence, and the factfinder (the jury, if requested, or the trial court) determines whether the unadjudicated extraneous offense was proven beyond a reasonable doubt. *See id.* at 953.

Appellant cites no case where an appellate court has reviewed the sufficiency of the evidence of an unadjudicated extraneous offense admitted under article 37.07, section 3(a). Nor are we aware of any cases holding that the sufficiency of such evidence is unreviewable. However, in the posture in which appellant presents the issue, our determination is limited to whether the evidence is reviewable for factual sufficiency under the standard set out in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim.App.1996).[3]

■ The effect of a factual sufficiency review in a criminal case is to permit a defendant to receive a new trial when the finding of guilt, although supported by legally sufficient evidence, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See*

2. The State argues that appellant waived any error because the record does not show that the trial court found the extraneous offense was proven beyond a reasonable doubt. For purposes of this opinion, we will consider the trial court's denial of appellant's request not to consider the offense to be a finding on the record that the offense was proven beyond a reasonable doubt and we will presume that the trial court, having found it to be supported by sufficient evidence, considered the offense in assessing punishment. Sufficiency review of unadjudicated extraneous offenses may not be possible if the record does not affirmatively show that the factfinder found the offense proven beyond a reasonable doubt, although we do not so hold in this case.

3. We need not, and do not, determine whether the evidence is reviewable under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Clewis,* 922 S.W.2d at 134–36. Thus, the factual sufficiency review insures that a person does not suffer the stigma and hardship caused by a criminal conviction when the conviction is clearly wrong and unjust. No such considerations apply to the punishment phase of a trial. There, the defendant has already been convicted, and the only issue is what punishment, within a set range, should be assessed against the defendant.[4] The defendant is not found "guilty" of the unadjudicated extraneous offense, and he is punished only for the charged offense, although the factfinder may consider the unadjudicated, extraneous offense in determining what punishment to assess. Unlike review of the defendant's guilt of the charged offense, where the issue before the appellate court is the ultimate issue of the fairness of the defendant's guilt, review of extraneous offenses at punishment concerns only an evidentiary issue and not an ultimate issue concerning the appellant's punishment.[5] None of the considerations supporting the application of a factual sufficiency review to a finding of guilt applies to the finding at the punishment phase that a defendant committed an unadjudicated extraneous offense.

■ We hold that the factual sufficiency review, as set out in *Clewis v. State,* does not apply to a factfinder's determination at the punishment phase that the evidence proves beyond a reasonable doubt that the defendant committed an unadjudicated extraneous offense. We overrule appellant's first point of error.

4. Factual sufficiency review is appropriate at the punishment phase where the jury's evidentiary finding is one of historical fact and determines which punishment range is to be applied to the defendant. *See Naasz v. State,* 974 S.W.2d 418, 422 (Tex.App.—Dallas 1998, pet. ref'd) (appropriate to perform factual sufficiency review of jury's determination at punishment phase that an appellant convicted of murder failed to prove that he caused the death under the immediate influence of sudden passion arising from adequate cause,

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second through fifth points of error, appellant contends he was denied effective assistance of counsel at trial. The right to effective assistance of counsel is guaranteed under both the federal and state constitutions. *See* U.S. CONST. amend. VI; Tex. CONST. art. I, § 10. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established an authoritative federal constitutional standard for determining ineffectiveness of counsel and for ascertaining when such ineffectiveness is prejudicial. The Texas Court of Criminal Appeals has adopted the *Strickland* standard for judging claims under the Texas Constitution. *See Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

The *Strickland–Hernandez* standard establishes a two-part test to be used in considering ineffectiveness claims. First, an appellant must show that trial counsel's representation fell below an objective standard of reasonableness in that counsel made errors so serious that counsel was not functioning as the reasonably effective counsel guaranteed by the state and federal constitutions. Second, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55. The alleged deficiencies of counsel must be supported by the record. *Johnson v. State,* 691

which would reduce the offense from a first degree to a second degree felony).

5. An ultimate issue at punishment that may be subject to a sufficiency review would be one that affects the range of punishment, such as the issue of a murder defendant's sudden passion or an aggravated kidnapping defendant's release of the victim in a safe place. *See* TEX. PENAL CODE ANN. §§ 19.02(d), 20.04(d) (Vernon 1994 & Supp.2000); *Naasz v. State,* 974 S.W.2d at 422.

S.W.2d 619, 626–27 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985).

■■■ We are given further aid in judging the first prong of the *Strickland–Hernandez* test:

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55. Judicial scrutiny of counsel's performance must be highly deferential; a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Thus, an appellant faces the onerous burden of overcoming a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *see also Small v. State,* 692 S.W.2d 536, 538 (Tex.App.—Dallas 1985, pet. ref'd).

■■■ We do not inquire into defense counsel's trial strategy unless no possible basis exists in strategy or tactics for trial counsel's actions. *See Johnson v. State,* 614 S.W.2d 148, 152 (Tex.Crim.App. [Panel Op.] 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *See Jackson v. State,* 877 S.W.2d 768, 772 (Tex. Crim.App.1994). A silent record does not require an appellate court to speculate on the reason for trial counsel's decisions. *See id.* at 771. Our speculation on the reasons for trial counsel's actions is "not material." *Id.* However, when a cold rec-

ord clearly confirms that no reasonable trial counsel could have made such trial decisions, to hold counsel ineffective is not speculation. *See, e.g., Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim.App. 1992) (per curiam). With these standards in mind, we examine the acts and omissions that appellant alleges were not the result of reasonable professional judgment.

### Voir Dire

■■■ In his second point of error, appellant contends he did not receive effective assistance of counsel during voir dire. Appellant first argues his counsel was ineffective because he failed to challenge a prospective juror "who made blatantly prejudicial remarks and ended up the foreperson of the jury."

This prospective juror was David McCoy, a professor of photography and teacher of "the mystery of single malt whiskey." The record shows that McCoy's six-year-old niece had been sexually abused by her stepfather. When McCoy was asked if this circumstance "would come to bear" if he were selected as a juror, McCoy said, "Yes, especially on the details." When asked "what kind of things you would be listening for particularly," McCoy answered, "Oh, I would be interested in the reaction of the various people involved." Later in the defense's voir dire, the following exchange occurred:

[McCoy]: Just an observation, it may be totally inappropriate. Something that I'm serious about in relation to what you said there is should the D.A. pursue—just from my observation here, you know, the defense has two attorneys with them, the prosecution one, and my observation is that he's considerably less experienced than you are.

[Defense Counsel]: I don't know why you'd say that.

[McCoy]: But that's personal opinion. I'm just wondering is-is the prosecu-

tion only half the manpower and everything -

The Court: Oh, Mary Miller will be the lead counsel. She will be back. She will -

[McCoy]: But she hasn't been here for all of this. And that was just a question that I had.

\* \* \*

[McCoy]: ... [M]aybe I watched Perry Mason too much or something. But I understand that jury selection is one of the most very important things. There are-some cases, they even hire professional people in that area and that's what you're doing now is selecting jurors. your side of this contest involves two people, including the defendant -

[Defense Counsel]: Right.

[McCoy]:—whereas the prosecution has one.

[Defense Counsel]: Right.

[McCoy]: And if three heads aren't better than one in this business, it's only that point. So you've got one person observing there, and you guys have three, so that was my point.

[Defense Counsel]: Yeah.

[McCoy]: I'm not saying anything other than that.

[Defense Counsel]: No, I understand.

[McCoy]: I hope that's true.

[Defense Counsel]: Don't worry about me, Mr. McCoy.

[McCoy]: With the crime situation the way it is, the kind of crimes, I'm very worried about it. If this is what the prosecution does in preparing the [sic] prosecute a potential criminal, you better bet I'm concerned about it and you better get concerned about it.

[Defense Counsel]: I—yes, sir.

[McCoy]: I served on a trial—on a jury where there was evidence presented by the prosecution, and I witnessed the credibility of that eyewitness was a big issue, but because the defense didn't give us any—any other avenues to consider, or at least that was my feeling about it, then the—then we had to reach a guilty verdict.

[Defense Counsel]: All right. Because the defense didn't present you any other reasonable alternatives or hypotheses, you didn't have anything to weigh it against.

[McCoy]: Right.

During individual questioning of selected prospective jurors outside the hearing of the rest of the panel, the following occurred when the trial court and lawyers questioned McCoy:

The Court: Professor McCoy, please, Sheriff.

[Prosecutor]: He'll want to give me some pointers.

The Court: Professor McCoy, you are aware that the field has been leveled a little bit. Call your attention to Ms. Miller is in the courtroom and seated next to her is the investigator assigned to this court as well.

[McCoy]: Then we have a chance here.

The Court: With that as a precursor, you indicated something about a relative. What might that be, please?

[McCoy]: Had a six-year-old niece last year that was molested by her stepfather, and we have—I mean, it was up in Oklahoma, southeast Oklahoma, and we've really been after it.

The Court: Can you set that familial incident aside and be fair and impartial to both sides in this case?

[McCoy]: (Nods head.)

The Court: Anything else that you think we need to know about? [Defense counsel], have you any questions for Professor McCoy?

[Defense Counsel]: No.

[Prosecutor]: No questions.

Appellant argues that McCoy's statements show he was "blatantly" biased in favor of the State. We disagree. McCoy's

statements show that he was critical of the State's apparent lack of attention to the jury selection process. McCoy's statements about his previous jury service suggest he would have considered acquitting the defendant if the defense had provided a ground for him to do so. Appellant's counsel may also have believed that a professor of the arts might be more open to the defense's side of the case than the prospective jurors whom counsel challenged.

Jury selection is a highly strategic matter. Without knowing why counsel chose not to challenge McCoy, we cannot determine that counsel was ineffective. *See Jackson,* 877 S.W.2d at 771. "Consistently with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio v.. State,* 840 S.W.2d 443, 447 (Tex.Crim.App. 1992) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). We hold that appellant has failed to show his counsel erred by not challenging McCoy. Appellant's argument does not meet the first prong of *Strickland.*

 Appellant also argues that counsel was ineffective for not objecting to the prosecutor's questioning the prospective jurors about whether they believed that a defendant who did not testify was trying to hide something from the jury. Appellant asserts that his counsel was ineffective for not objecting "to any of the State's comments." Appellant argues that the prosecutor inferred "that the main reason for not testifying had to do with hiding something." We disagree. The prosecutor questioned the prospective jurors about whether they subjectively believed that a nontestifying defendant was trying to hide something. Appellant argues that this questioning poisoned the jury panel and effectively stripped him of his constitutional right not to testify. If the record affirmatively showed that, but for the prosecu-

tor's statements, a prospective juror would *not* have considered that a nontestifying defendant might have something to hide, then appellant's argument might have some merit. However, the record contains no such showing. Therefore, appellant has failed to show that the prosecutor tainted the jury panel and that his counsel erred by not objecting. Appellant's argument does not meet the first prong of *Strickland.* We overrule appellant's second point of error."

## Identification of Appellant

In his third point of error, appellant contends that his counsel was ineffective for not objecting to the photographic spread shown Cooper as suggestive and that he was ineffective for not objecting to Cooper's in-court identification as tainted by the suggestive photographic spread.

 An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. The test is whether, considering the totality of the circumstances, the pretrial identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App.1998); *Jones v. State,* 772 S.W.2d 551, 553 (Tex. App.—Dallas 1989, pet. ref'd). As the Supreme Court and the court of criminal appeals have noted, "Reliability is the critical question:

'[I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," "reliability [being] the linchpin in determining the admissibility of identification testimony." ' "

*Loserth,* 963 S.W.2d at 772 (quoting *Webb v. State,* 760 S.W.2d 263, 269 (Tex.Crim.

App.1988) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)), *cert. denied,* 491 U.S. 910 (1989), 109 S.Ct. 3202, 105 L.Ed.2d 709) (brackets by court of criminal appeals). The trial court should weigh the following nonexclusive factors against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances:

- The opportunity of the witness to view the criminal at the time of the crime;
- The witness's degree of attention;
- The accuracy of the witness's prior description of the criminal;
- The level of certainty demonstrated by the witness at the confrontation; and
- The length of time between the crime and the confrontation.

*See Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Loserth,* 963 S.W.2d at 772.

■ A photographic spread should depict persons of the same race, general skin color, age, and height as the suspect. *See Clay v. State,* 702 S.W.2d 747, 749 (Tex.App.—San Antonio 1985), *pet. ref'd,* 724 S.W.2d 58 (Tex.Crim.App.1987). There is no standard as to the similarities required of the subjects used in a pretrial identification procedure, only that there not be a likelihood of irreparable misidentification. *See id.* The mere fact that lineup participants do not perfectly match the physical description of the accused does not render a lineup impermissibly suggestive. *See Cooks v. State,* 844 S.W.2d 697, 732 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

■ Appellant asserts that the photographic spread was unnecessarily suggestive because his skin is the darkest, his head is the largest, the background is the lightest, and his picture is the only one without a placard showing. Appellant also notes that only his picture and one other show thick-necked men and that he is the only person in the photographic spread without facial hair. However all the men are black, bald, and appear to be approximately the same age. Although it may be better practice to use photographs that portray persons whose every feature is similar to the suspect's, that is not always practical, and neither due process nor common sense requires it. *See Epps v. State,* 811 S.W.2d 237, 244 (Tex.App.—Dallas 1991, no pet.) (and cases cited therein). In this case, the photographic spread was not so unnecessarily suggestive and conducive to irreparable misidentification that counsel would have been in error by not objecting to it. Appellant's argument does not meet the first prong of *Strickland.*

■ Appellant also argues that counsel was ineffective for not objecting to Cooper's in-court identification of appellant as her assailant. As discussed above, the photographic spread was not unnecessarily suggestive. However, even if it were suggestive, the in-court identification was admissible if the totality of the circumstances demonstrate the reliability of the identification. *See Loserth,* 963 S.W.2d at 772.

■ In this case, Cooper testified that she got a good look at her assailant in clear daylight. She stated that she stared at her attacker's face, which was just inches from hers. The attacker did not try to disguise himself or prevent Cooper from seeing him. When Cooper was shown the photographic spread, she had no difficulty identifying appellant's photograph as that of her attacker. Cooper testified that her identification of appellant was based on observing him during the attack.

Appellant seeks to discredit the reliability of Cooper's identification by noting internal inconsistencies in her testimony. During the pretrial identification hearing, Cooper characterized the assault as lasting "maybe 20 minutes, or 15, 20 minutes, because we had to drive to the hospital. It wasn't very long at all . . . ." Appellant asserts that this testimony was inconsistent with her evidence during the trial

where she said, "It seemed like it was forever, but it was-timing from the time I left the house until the time I got to the hospital, it might have been 45 minutes at the most." This difference in testimony between twenty minutes and forty-five minutes is not inconsistent because the testimony concerned different periods of time. Cooper's pretrial testimony concerned only the length of the assault, while her testimony during trial included driving to the car wash, awaiting the ambulance, and driving to the hospital in the ambulance, as well as the period of time during the attack. Appellant also contends the periods are inconsistent because she characterized the attack as lasting not very long in her pretrial testimony and that "it seemed like it was forever" in her trial testimony. This difference in her testimony reflects different subjective interpretations of the length of time; it does not indicate different actual periods of time. Nor does this inconsistency indicate any unreliability in her identification of appellant as her attacker.

Appellant also asserts that Cooper's identification of appellant is unreliable because she misstated his height. During the pretrial identification hearing, Cooper testified that her attacker was "around five ten, five eleven." Appellant is five feet seven inches tall. However, in her description she made to the police shortly after the attack, Cooper described her assailant as "approximately five seven to five ten." Cooper testified that she has difficulty estimating the height of people taller than she. This inconsistency does not render Cooper's identification unreliable.

Appellant also argues that Cooper's identification of appellant was unreliable because she could not describe whether he had any scars or gold teeth. However, the record does not show that appellant had any scars or gold teeth. Appellant's argument lacks merit.

Considering the totality of the circumstances, we conclude Cooper's identification of appellant was reliable and that appellant's counsel did not err by not objecting to her in-court identification. Appellant's argument fails the first prong of *Strickland.* We overrule appellant's third point of error.

### Victim Impact Statement

In his fourth point of error, appellant contends he was denied effective assistance of counsel because his counsel did not object (1) to Cooper's "victim impact" testimony during the guilt phase of the trial and (2) to the prosecutor's multiple innuendos about another investigation.

■■■ Evidence of a sexual assault victim's emotional trauma is not relevant at the guilt phase of the trial unless the victim's lack of consent to the assault is disputed. *See Brown v. State,* 757 S.W.2d 739, 740–41 (Tex.Crim.App.1988). In this case, Cooper's lack of consent was not contested, so her "victim impact" testimony [6] was inadmissible. *See id.*

■■■ Assuming that counsel was in error for not objecting, we must determine whether the record shows a reasonable probability that the outcome of the case would have been different but for counsel's error. *See Strickland,* 466 U.S. at 687; *Hernandez,* 726 S.W.2d at 55. In this case, Cooper identified appellant as her assailant, she found a towel belonging to appellant in her car, and the license num-

---

**6.** Appellant complains of the following exchange between the prosecutor and Cooper:

Q Can you tell this jury how it [the assault] has affected your life?

A I—I believe that a single individual is not safe on the street anymore. I do not go unescorted anywhere. Not night-and because of this I've also realized that the daylight is no different than the dark any-

more. It's-it's dangerous out there anywhere. I've-it's changed in to where I don't-instead of proving the people-or trusting-building up-looking at someone and saying they're safe, I don't do that anymore. I keep a distance, and I always leave a way out wherever I go now. And I try not to travel by myself. Two is better than one is [sic] any day.

ber she wrote down as being from her attacker's car was similar to the license number on appellant's car. We conclude the record does not show a reasonable probability that the outcome of the trial would have been different if counsel had objected to Cooper's "victim impact" testimony. Appellant's argument fails the second prong of *Strickland.*

■ Appellant also argues that his counsel was ineffective for not objecting to the prosecutor's multiple innuendos about another investigation. Irving police detective Joe Hennig testified that he spoke to his sergeant about the case, who told him that Investigator Keyes "was working on something." Hennig· testified that after speaking with Cooper, appellant's wife, and Keyes, and after investigating the license plate number received from Cooper and showing Cooper the photographic spread, Hennig obtained an arrest warrant for appellant. Appellant also complains that his attorney should have objected to the following portion of the State's closing argument summarizing Hennig's investigation:

> [W]hat did he do? He spoke with another Irving investigator, Investigator Keyes, who as Detective Hennig said, was working on something else. And how—and lo and behold, turned him on to the defendant.

Appellant argues that Hennig's testimony and the prosecutor's jury argument implied that Keyes was investigating appellant on another offense and constituted evidence of an extraneous offense. Assuming that appellant is correct and that his counsel should have objected to this testimony and jury argument, we cannot conclude that a reasonable probability exists that the outcome of the case would have been different if counsel had objected. Appellant's argument fails the second prong of *Strickland.* We overrule appellant's fourth point of error.

## Punishment Phase

In his fifth point of error, appellant contends he did not receive effective assistance of counsel at punishment. The *Strickland* standard applies to claims of ineffective assistance of counsel at the punishment phase. *See Hernandez v. State,* 988 S.W.2d 770, 770 (Tex.Crim.App.1999). Appellant complains that his counsel should have objected to the inclusion in a penitentiary packet of hearsay evidence of extraneous offenses and to Trujillo's "victim impact" testimony.

The State introduced exhibit 41, a penitentiary packet from Louisiana. The packet contained court documents on two convictions, one for felony theft and one for "unauthorized use of moveables." Appellant had received a pardon for the unauthorized-use conviction. Also contained in the packet was a "rap sheet" showing that between 1977 and 1987, appellant had been convicted of aggravated rape, "sim. escape," "s. crim. damage to property," simple battery, "unauthorized use of moveables," and second degree battery, as well as the felony-theft conviction.

■ Only a final conviction is admissible as evidence of a defendant's criminal record. To be considered evidence of a final conviction, a penitentiary packet must contain a judgment and sentence, properly certified. *See Langston v. State,* 776 S.W.2d 586, 587 (Tex.Crim.App.1989). The penitentiary packet in this case contains no document purporting to be a judgment or sentence or any document with similar purpose, such as a commitment order. *Cf. Francis v. State,* 792 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd) (Louisiana commitment order showing the offense committed and sentence was sufficient to establish prior conviction). Thus, none of the documents in the penitentiary packet showing appellant's prior convictions was admissible. *See Langston,* 776 S.W.2d at 587–88 (rejecting argument that "Journal Entry" purporting to sentence appellant for bur-

glary was functional equivalent of judgment and sentence).

■ However, having reviewed the entire record, we conclude no reasonable probability exists that the outcome of the case would have been different had appellant's counsel objected to the penitentiary packet. The other evidence showed that appellant was a violent man who preyed on women. The evidence of the attempted aggravated sexual assault of Trujillo demonstrated that appellant would break into houses and lie in wait for women to come home so he could rape them. These facts justify the maximum penalty of a life sentence. Appellant's argument fails the second prong of *Strickland.*

■ Appellant also argues that his counsel was ineffective for not objecting to Trujillo's "victim impact" testimony.[7] The testimony of the victim of an extraneous offense concerning the effect of the offense on her life is not admissible. *See Boston v.. State,* 965 S.W.2d 546, 550 (Tex.App.— Houston [14th Dist.] 1997, pet. ref'd) (citing *Cantu v. State,* 939 S.W.2d 627, 637 (Tex.Crim.App.1997) (victim impact testimony for extraneous offense not admissible in punishment phase of capital murder case), *cert. denied,* 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1998)). However, as explained above, the evidence fully supported imposition of the maximum punishment. We conclude no reasonable probability exists that the outcome of the case would have been different had appellant's counsel objected. Appellant's argument fails the second prong of *Strickland.*

■ Appellant also contends that his attorney should have requested a hearing outside the presence of the jury to determine the reliability of Orozco's identification of appellant as Trujillo's attacker. In this case, Orozco testified that he got "a good look" at Trujillo's attacker. The record does not show that Orozco's testimony would have been any different or that his identification of appellant would have been excluded if appellant's counsel had requested a hearing on Orozco's identification of appellant. Accordingly, appellant has failed to show a reasonable probability that the outcome would have been different had his counsel requested a hearing. Appellant's argument fails the second prong of *Strickland.* We overrule appellant's fifth point of error.

## DUE PROCESS OF LAW/DUE COURSE OF LAW

In his sixth point of error, appellant contends his counsel's errors deprived him of his federal and state constitutional rights to due process of law and due

---

7. Trujillo testified as follows:

Q Now, Sheila, tell the Court how this has affected your life.

A My God, where do I begin? It's changed my life. It has absolutely changed my life. For the first what, first three months, six months, I lived in fear, not knowing where this phantom was, not knowing why, and I still would like to know why, why, came [sic] into my life and completely changed it. But you didn't change me, and you still didn't get me. You still did not get me. You tried, but you didn't win. I want you to know that. I understand what this type of attack is. It's a power thing. You have no power over me, and you have no power over my life, and I want you to know that. I want you to know that. That's something I want you to live with the rest of your life, because that's what you chose for me to live with the rest of my life. And also another thing I'm not a victim. I want you to know something else, I'm a survivor. You didn't get [sic]. You did not get me. Can't even look me in the face.

Q Sheila, is there anything else you want to say?

A Yes. Make him be held accountable for what he's done. Give him the strongest sentence you can so he cannot hurt anybody else the way he's hurt me and my family and Alex and Cindy and most of all the hell he's put these other women through. Make him pay for what he's done. It's time to make it stop, make the cycle stop. Have him be held accountable for everything that he's done. Don't let him go free. I mean, throw the book at him. Do what you have to do to the fullest extent of the law, because, sir, that is your job. Do it. Make him be held accountable. Don't let him hurt anybody else.

course of law. Appellant asserts counsel's errors outlined in his second through fifth points of error deprived him of his right to an impartial tribunal and to an advocate who would act as an adversary to the State's prosecution. We have reviewed the record, and we conclude, for the reasons discussed in our treatment of his second through fifth points of error, that he was not denied these rights. We overrule appellant's sixth point of error.

We affirm the trial court's judgment.