Opinion issued February 26, 2004

















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01017-CR




GARY DON COLGIN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 01CR1755




O P I N I O N

          A jury convicted appellant Gary Don Colgin of aggravated sexual assault,
found true an enhancement allegation of a previous conviction of sexual assault, and
assessed punishment at life imprisonment. On appeal, Colgin complains that the trial
court erred in (1) refusing to suppress his written statement; (2) admitting a photo
array; and (3) admitting two witness identification sheets based upon the
photographic lineup. The trial court did not abuse its discretion in admitting this
evidence, and we therefore affirm.
Facts and Procedural History
          In September 2001, Lieutenant Jackson of the LaMarque Police Department
responded to a complaint of aggravated sexual assault at the Factory Outlet Mall. The
suspect had fled the scene, so after conducting an investigation, Jackson returned to
the police station. Later that day, Jackson reported the assault incident to Captain
Zacherl of the LaMarque Fire Department. Zacherl informed Jackson that the fire
department just had brought an individual matching the assailant’s description to the
Columbia Mainland Center Hospital. Jackson contacted Sergeant Macik, an officer
assigned to the Criminal Investigation Division of the LaMarque Police Department,
and informed him that a suspect in the aggravated sexual assault investigation was
receiving treatment at the hospital. 
          Jackson and Zacherl immediately drove to the hospital, and Macik arrived
shortly thereafter. Upon finding Colgin in the hospital emergency room and
determining that he indeed matched the complainant’s description, Jackson read
Colgin his Miranda warnings.


 
          Colgin later confessed his crime to the police. In addition, the complainant
selected Colgin as her assailant out of a photo array provided for her review by the
police. The police procedures used in obtaining the confession and the photo
identification form the basis of Colgin’s complaints on appeal.
          Jackson and Macik testified at the suppression hearing. Jackson testified that
after he read Colgin his Miranda warnings, he asked Colgin whether he had been at
the Factory Outlet Mall that day, to which Colgin responded, “I have nothing to say.” 
Jackson left Colgin’s hospital room, notified the dispatch officer that he had located
a possible suspect in the sexual assault case, and waited for another officer to arrive. 
Macik testified that when he arrived at the hospital, Jackson informed him that he had
read Colgin his Miranda warnings. Macik introduced himself to Colgin, and
informed him that he was investigating an incident that occurred that day at the
Factory Outlet Mall. Macik provided Colgin with a waiver of rights form and asked
Colgin whether he could read and write. Colgin acknowledged that he could read and
write, and Makic testified that he explained the waiver form as follows:
I explained to him that after he read each of the numbered lines there
[sic] to place his initials if he understood them; or if he had any
questions, to ask me and I’d explain the questions to him. I also asked
him to place his initials on the bottom of the Waiver of Rights
paragraph, and if he understood those rights, that if he waived his rights
and agreed to talk to us about the investigation, for him to sign it, date
it and time it, [sic] which he did.



          Makic testified that Colgin read the form. While reading it, Colgin never
indicated that he could not see the words, or that he needed reading glasses. Macik
also testified that Colgin did not appear to be delusional, and that Colgin freely and
voluntarily signed the waiver. After Colgin executed the waiver, he and Macik
discussed the events leading up to his arrival at the hospital. Macik then asked
Colgin whether he was involved in a sexual assault at the Factory Outlet Mall. 
Colgin responded, “No Comment.”
          Macik left the hospital, but later returned to continue the investigation, and to
obtain Colgin’s photograph for use in a photographic line-up. Macik testified that
Colgin spontaneously stated, “I don’t want the girl to hurt anymore. I will give you
a statement.” A physician from the psychiatric unit evaluated Colgin and released
him from the hospital. Officer Mallette, the police officer guarding Colgin while he
received treatment at the hospital, transported Colgin to the police station.
          Upon arrival, Colgin received a second waiver form, identical to the first. 
Macik testified that Colgin “read over” and executed the second waiver, and that
Colgin never indicated that he could not read or did not understand the second
waiver. 
          Colgin then made an oral statement, which Macik typed “basically word for
word -- not word for word what he said, but in the contents of what he was telling
me.” Before signing the statement, Colgin informed Macik that he did not have his
reading glasses. Macik testified as follows:
At that point, I read him [sic] word for word the written statement that
I had obtained from him. And at the conclusion of taking that statement,
[Colgin] signed it, and it was witnessed by myself and then Lieutenant
Willie Bird.” 

Macik testified that Colgin told him that he understood everything that was read to
him, and Colgin declined the opportunity to add or delete anything.
          Macik also testified that he never denied Colgin a restroom break or food, did
not threaten him, and that Colgin never indicated while giving his statement that he
desired to stop, or that he wished to speak with an attorney. Colgin never requested
an attorney, did not seem incoherent, and, according to Macik, appeared to be
“voluntarily participating in the process of giving a statement.”
          Colgin’s testimony at the motion to suppress hearing conflicted with the State’s
evidence. Colgin acknowledged that Jackson immediately read his rights to him and
asked whether he desired to make a statement. Colgin testified, however, that he then
requested an attorney, whereupon Jackson left the room. Colgin testified that Macik
later entered, asked Colgin his name, and started questioning him. Colgin testified
regarding his exchange with Macik as follows: “He read me my rights, too, and asked
me if I had read my rights, and I said ‘Yes.’ And I told him I’d like to speak to a
lawyer.”
          Colgin testified that he continued to ask for an attorney, but Macik persisted
in his interrogation. Colgin also testified that he told Macik that he was tired, and
that he wanted to go to sleep, but Macik ignored his requests. Instead, Colgin
testified that Macik said that the police needed to get a statement before taking him
to the Galveston County Jail, because Colgin had indicated his desire to commit
suicide, and the LaMarque Police Department would be unable to keep him at their
facility under a suicide watch. Colgin testified that he felt very intimidated, and he
eventually gave the statement, transcribed by Macik, but that, without reading
glasses, he was unable to read it.
          On cross-examination, Colgin admitted that he initialed and signed both waiver
forms. Colgin testified that normally he does not sign a document until after reading
it, but in this instance, he signed the waiver forms and the statement containing his
confession because he was not in a “normal frame of mind.”
The Motion to Suppress
          In his first and second issues, Colgin contends that his confession was the
result of coercion. Relying on Farr v. State, 519 S.W.2d 876, 878 (Tex. Crim. App.
1975), he contends that three instances of “coercive conduct” not “satisfactorily
explained” by the State render Colgin’s confession inadmissible as a matter of law.
1.       Standard of Review
          In reviewing the trial court’s ruling on a motion to suppress evidence, we defer
to the trial court’s determination of facts, particularly when the trial court’s findings
turn on an evaluation of the credibility and demeanor of the witnesses. Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deference in
reviewing the trial court’s rulings on mixed questions of law and fact if they turn
upon a similar credibility evaluation. Id. If a mixed question of law and fact does not
turn on a witness’s credibility and demeanor, however, we review the trial court’s
determination de novo. Id. 
          In this case, we review the record to determine whether it supports the trial
court’s finding that Colgin made a free and voluntary statement to police. Wyatt v.
State, 23 S.W.3d 18, 23-24 (Tex. Crim. App. 2000). See also Tex. Code Crim.
Proc. Ann. art. 38.21 (Vernon 1979) (statement of accused may be used against him
if freely and voluntarily made without compulsion or persuasion).
2.       The Suppression Hearing
          Colgin identifies three instances of police conduct which form the basis of his
complaint that his confession was not voluntary, namely that the police: (1) allowed
the hospital to release Colgin when he should have been kept for observation under
a suicide watch; (2) failed to discontinue the interview despite his statement that he
was tired and wanted to rest; and (3) failed to allow Colgin to find and use his reading
glasses before he signed the statement. 
          We reject Colgin’s contention that his confession was coerced, and conclude
the trial court’s findings of fact and conclusions of law are supported by the record. 
The motion to suppress presented the trial court with two versions of the events
surrounding Colgin’s statement, and required the trial court to evaluate the credibility
of the witnesses at the hearing. See Guzman, 955 S.W.2d at 89. The trial court is the
sole judge of credibility of the witnesses and the weight to be afforded their
testimony. See id. As evidenced by its findings of fact, the trial court believed
Jackson and Macik. There is evidence in the record to support this determination and
we defer to it. See e.g. Wyatt, 23 S.W.3d at 24-25 (trial court did not err in holding
confession made freely and voluntarily, despite fact that defendant testified that
officers intimidated him into signing statements and ignored his requests for an
attorney, and that he did not have his glasses with him to read and correct his
statements). See also Pete v. State, 501 S.W.2d 683, 686 (Tex. Crim. App. 1973)
(fact that appellant was illiterate did not render confession inadmissible, as record
supported fact that officers read confession to defendant before he signed it).
          Colgin further contends that the State failed to “satisfactorily explain” four
allegations of coercive conduct, rendering his confession inadmissible:
1.The police officers were aware that Colgin was suicidal;
 
2.During his interrogation, Colgin informed the interrogating
officers that he was tired and wanted to rest;
 
3.The interrogating officer informed him that he must complete the
interrogation before he could be taken to the Galveston County
Jail; and
 
4.The police did not give Colgin his reading glasses before he
signed the statement containing his confession.
See Farr, 519 S.W.2d at 878-79. Colgin failed to provide any citation to the record
showing that he raised this complaint to the trial court. Our review of the record,
however, indicates that Colgin contended at the hearing that there were “better ways”
of handling the statement than “the way this was handled.” The State’s position in
the trial court, however, was not that the alleged coercive conduct could be
“satisfactorily explained.” Rather, with the exception of a request for reading glasses,
Jackson and Macik denied that Colgin’s version ever took place. In Farr, the Court
of Criminal Appeals noted that the police officers that Farr contended coerced him
into confessing were not called to testify, and “[t]heir failure to be called as witnesses
left appellant’s testimony as to coercion and threats at the time of the arrest
completely uncontroverted.” Farr, 519 S.W.2d at 878. In this case, the officers
against whom Colgin lodged misconduct allegations testified regarding the events
surrounding Colgin’s confession at the suppression hearing. Colgin’s reliance on
Farr v. State is therefore misplaced.
          We overrule Colgin’s first and second issues.
Witness Identification
          In his third and fourth issues, Colgin contends the trial court erred in admitting
an out-of-court photo lineup because it impermissibly suggested Colgin’s identity and
tainted a subsequent in-court identification. Colgin also contends that the trial court
erred in admitting witness identification sheets, completed by witnesses on the date
of the offense, because they were the product of the impermissibly suggestive
identification procedure.
1.       Standard of Review
          We defer to a trial court’s determination of historical facts supported by the
record when the trial court finds facts based upon an evaluation of the credibility and
demeanor of the witnesses. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998). We similarly defer to the trial court’s rulings on mixed questions of law and
fact when they turn on the credibility of witnesses. Id. We review de novo, however,
mixed questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Id. at 772-73. Here, the admission of the photo array does not turn on a
credibility evaluation, and therefore we review it de novo.
2.       The Identification Procedure
          In-court identifications are inadmissable when tainted by an unduly suggestive
pretrial identification. See Loserth, 963 S.W.2d at 771-72. To determine whether a
trial court correctly admitted an in-court identification, we employ a two-step
analysis, and determine (1) whether the pretrial identification was impermissibly
suggestive, and if so, (2) whether the suggestive pretrial identification gave rise to a
substantial likelihood of irreparable misidentification at trial. Loserth v. State, 985
S.W.2d 536, 543-44 (Tex. App.—San Antonio 1999, pet. ref’d). In order for an in-court identification to be inadmissible, Colgin must demonstrate the existence of both
elements by clear and convincing evidence. Id.
          Neither due process nor common sense requires that the individuals in a lineup
exhibit features exactly matching the accused. Turner v. State, 600 S.W.2d 927, 933
(Tex. Crim. App. 1980). Rather, a photo array must contain individuals who fit a
rough description of the suspect. Wilson v. State, 15 S.W.3d 544, 553 (Tex.
App.—Dallas 1999, pet. ref’d). Here, Colgin contends that the photo array was
impermissibly suggestive because it did not exactly replicate the condition of his eye,
and the other individuals depicted in the array “were of distinctly different body
types.”
          Macik, who created the photographic array, testified that he carefully selected
the other men in it, looking specifically for Anglo-American men dressed in civilian
clothes, close to the same size and build as Colgin, and who exhibited eye
characteristics similar to Colgin. Macik testified that it took him longer than usual
to construct the photo array, because he searched for photographs of men who had a
“bad eye or something that would stand out in his eye to match up [to] the description
that was provided by the victim.” Macik found four photographs of individuals
exhibiting a similar condition.
          The photographic array is part of the record on appeal. It consists of six white
males who are dressed in civilian clothes, and exhibit similar facial features. There
are no gross disparities in age among the six men, all have receding hairlines, and
although three of the men depicted in the photo array are heavier than Colgin, two
others in addition to Colgin have the same “gaunt” appearance. Furthermore, Colgin
does not dispute Macik’s testimony that the four photographs he located depict men
with a “bad eye or something that would stand out in his eye to match up the
description that was provided by the victim.”
          The individuals depicted in the photo array fit the rough description of Colgin. 
We hold that the photo array was not impermissibly suggestive, and did not constitute
an unfair lineup. Wilson v. State, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet.
ref’d). Because we conclude that the pretrial identification procedures were not
impermissibly suggestive, we need not address whether those procedures created a
substantial likelihood of misidentification. See Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988).


 Finally, because Colgin predicated his objection to the
admission of the witness identification sheets upon his contention that the
identification procedure was faulty, Colgin’s contention is, similarly, without merit.
          We overrule Colgin’s third and fourth issues. Conclusion
          The trial court’s ruling on Colgin’s motion to suppress his written statement
rests upon credibility determinations, and evidence in the record supports the trial
court’s findings. The photo array was not impermissibly suggestive and was
cumulative of other identification evidence admitted without objection. We therefore
affirm the trial court’s judgment.
 
                                                             Jane Bland
                                                             Justice

Panel consists of Justices Alcala, Hanks, and Bland.

Publish. Tex. R. App. P. 47.2(b).