Affirmed and Memorandum Opinion filed March 3, 2009








Affirmed and Memorandum Opinion filed March 3, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00531-CR

____________

 

ALBIE EUGENE HOPKINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 1091076

 



 

M E M O R A N D U M   O P I N I O N

Appellant
Albie Eugene Hopkins challenges his conviction for aggravated robbery following
a jury trial.  The jury assessed punishment as confinement for 25 years. 
Appellant contends that (1) the trial court erred by admitting out-of-court and
in-court identifications by the complainant; and (2) the evidence is legally
and factually insufficient to support the jury=s finding that appellant committed
the charged offense.  We affirm.








Background

Juan
Javier Hidalgo was robbed at approximately 8:15 p.m. on October 30, 2006, 
while walking across a parking lot to his gym on Fannin Street in Houston. 
Hidalgo was approached by an African-American male who asked him for a
cigarette and then asked him for money.  After Hidalgo refused both requests,
the man pushed him to the ground and began choking him with one hand while
holding a knife to his throat with the other.

Hidalgo
relinquished his wallet, cell phone, and gym bag to his assailant.  During the
attack, Hidalgo and his assailant noticed an African-American couple watching
them from the other side of a fence.  Hidalgo=s assailant dropped Hidalgo=s wallet and cell phone as he fled,
and then stopped to pick them up.  Hidalgo=s assailant then approached the
African-American couple and spoke to them.  Hidalgo could not hear what his
assailant told the couple, who then walked away.

Houston
Police Officer Jonathan Halliday responded to the robbery and interviewed
Hidalgo at the scene.  Hidalgo described his assailant as a six-foot-tall,
muscular African-American male with short hair, wearing a white muscle shirt
and dark pants.  Officer Halliday=s police report included this
description and stated that the assailant had no facial hair.

Houston
Police Officer E.W. Walker was patrolling the area near the crime scene on
October 31, 2006 when Raylon Shelton and Erica Manning flagged him down. 
Shelton and Manning told Officer Walker that they witnessed Hidalgo being
robbed and described his assailant as an African-American male with an Afro
hairstyle, who was wearing a white muscle shirt and dark pants.








Officer
Walker encountered appellant nearby and arrested him for public intoxication. 
Appellant had a light mustache and goatee.  At the time of his arrest,
appellant was wearing a white muscle shirt and otherwise matched Shelton=s and Manning=s description.  Officer Walker found
a kitchen knife in appellant=s back pocket during a pat-down search for weapons.  Officer
Walker then transported appellant to a Houston police station to meet with
Houston Police Officer William Cowles, Jr.

Officer
Cowles determined that appellant was too combative to be placed in a live
line-up for identification purposes, so he took a digital photograph of
appellant.  Officer Cowles placed appellant=s photo in a photo
array with other muscular African-American males with mustaches and goatees. 
Appellant was the only individual whose photo showed him wearing a white muscle
shirt.

Hidalgo met with Officer Cowles on November 1, 2006 to make
a written statement and to view multiple photo arrays.  Hidalgo positively
identified appellant from the photo arrays as his assailant.

Appellant=s jury trial for aggravated robbery began
on June 20, 2007.  Appellant moved before trial to suppress the photo array
procedure and Hidalgo=s identification of appellant.  Appellant
argued that the procedure was impermissibly suggestive and gave rise to a very
substantial likelihood of irreparable misidentification.  Appellant largely
based his argument on the fact that appellant was the only person on his page
of the photo array wearing a white muscle shirt like the one Hidalgo described
his assailant as wearing.

The trial court held a hearing on appellant=s motion before
trial outside the jury=s presence.  During this hearing, Officer
Cowles testified that he used photographs of five other individuals closely
resembling appellant in hairstyle, complexion, and facial hair in the photo
array to make the procedure Aas fair as possible.@  Officer Cowles
testified that he admonished Hidalgo before viewing the photo array that he was
not required to choose someone in the array and should point someone out only
if it was the person who robbed him.








Hidalgo testified during the hearing that he felt no
pressure from Officer Cowles to identify anyone; Officer Cowles did not suggest
he should choose appellant=s photo; and he had no trouble recognizing
appellant as his assailant.  When first asked if he saw the person he
identified in the photo array in the courtroom, Hidalgo said he did not. 
Hidalgo clarified his response when asked the question again, identifying
appellant while explaining Athat day he was wearing shorter hair.@  Hidalgo also
testified during the suppression hearing that he identified appellant=s photo based on
his facial appearance, and that he had not noticed until the hearing that
appellant was wearing the same type of shirt as his assailant.  The trial court
denied appellant=s motion to suppress.

The testimony of Hidalgo and Officer Cowles at trial was
largely repetitive of their testimony during the suppression hearing.  When
questioned about the statement in Officer Halliday=s report that
Hidalgo=s assailant did
not have facial hair, Officer Cowles testified Athat=s not unusual@ and said victims
do not typically review the initial officer=s report for
accuracy.  

Hidalgo testified at first that he told Officer Halliday
that his assailant had a goatee, but later stated that he was unsure whether he
mentioned facial hair to Officer Halliday.  Hidalgo also testified that he did
not mention any facial hair in his written statement but remembered his
assailant as having a goatee once he saw appellant=s photo.  Hidalgo
identified the knife appellant had in his pocket when he was arrested as the
one used in the robbery. 

At trial, Officer Walker testified that Shelton and Manning
described the details of the robbery as well as Hidalgo=s assailant. 
Officer Walker further testified that Shelton told him he could see the robber=s face, that the
robber was holding a shiny object to Hidalgo=s throat, and that
the object appeared to be a weapon.  Officer Walker testified that Shelton and
Manning pointed out appellant as Hidalgo=s assailant;
appellant was sitting across the street at the time he was pointed out. 
Officer Walker also testified that appellant got up and started walking away
upon seeing Shelton and Manning speaking to him.  








Shelton testified that he likely was under the influence of
drugs when he spoke to Officer Walker, and that he did not get a good look at
Hidalgo=s assailant and
could not identify him.  Shelton also testified that he did not point out
appellant to Officer Walker; gave Officer Walker only a vague description of
Hidalgo=s assailant; and
was unsure who he saw rob Hidalgo.  Shelton denied telling Officer Walker that
Hidalgo=s assailant had a
shiny object in his hand, or that the assailant spoke to him while fleeing. 
Shelton further testified that he was currently jailed for selling crack; had
been placed in a holding cell with appellant; and was worried about being
called a Asnitch.@

Tonya Davis testified that she was appellant=s common-law wife,
and that they were attending a church revival at the time of the robbery. 
Davis also testified that she was currently in jail on an aggravated assault
charge for which she was arrested on November 3, 2006 _ the same day
appellant was arrested.  Davis further testified that she assaulted her
complainant on November 3 because she was upset and angry that someone had
turned appellant in to the police.

The jury convicted appellant for the aggravated robbery of
Hidalgo.  The jury assessed appellant=s punishment as
confinement for 25 years.  Appellant appeals his conviction.

Analysis

Appellant contends that the trial court erred by admitting
Hidalgo=s out-of-court and
in-court identifications of appellant because they were based on an
impermissibly suggestive pre-trial identification procedure.  Appellant also
contends that the evidence is legally and factually insufficient to support the
jury=s finding that
appellant committed the aggravated robbery of Hidalgo.

I.        Pre-Trial
Identification Procedure








Appellant argues that the photo array procedure used by
Officer Cowles was impermissibly suggestive because (1) appellant=s photograph
showing him with facial hair was placed in a photo array even though Officer
Halliday=s police report
described Hidalgo=s assailant as not having facial hair; (2)
appellant was the only person featured in the photo array wearing a white
muscle shirt like the one Hidalgo=s assailant was
described as wearing; (3) Hidalgo was led to believe police had captured his
assailant; and (4) Officer Cowles did not explain to Hidalgo that the photo
array might not contain a photo of his assailant.

A pre-trial identification procedure may be so suggestive
and conducive to misidentification that it would deny the defendant due process
of law if the out-of-court identification is used at trial.  See Simmons v.
United States, 390 U.S. 377, 384 (1968); Barley v. State, 906 S.W.2d
27, 32-33 (Tex. Crim. App. 1995) (en banc).  Similarly, an in-court
identification is inadmissible if tainted by such an unduly suggestive
pre-trial identification procedure.  Loserth v. State, 963 S.W.2d 770,
771-72 (Tex. Crim. App. 1998) (en banc).  The test is whether, considering the
totality of the circumstances, the procedure (1) was impermissibly suggestive;
and, if so, (2) gave rise to a very substantial likelihood of irreparable
misidentification.  Id. at 772; Barley, 906 S.W.2d at 33. 

Whether a pre-trial identification procedure was
impermissibly suggestive is a mixed question of law and fact that does not turn
on an evaluation of witnesses= credibility and demeanor.  See Loserth,
963 S.W.2d at 773.  We review de novo mixed questions of law and
fact that do not turn on an evaluation of credibility and demeanor.  Id.
at 772-73.  To challenge a trial court=s ruling allowing
the identification, an appellant must show by clear and convincing evidence
that the identification is unreliable.  See Delk v. State, 855 S.W.2d
700, 706 (Tex. Crim. App. 1993) (en banc).

When parties re-litigate during trial the issue addressed
by a pre-trial suppression hearing, we consider all of the evidence from trial
and the hearing in reviewing the trial court=s decision.  Gutierrez
v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).








To establish error by the trial court in admitting Hidalgo=s identifications,
appellant first had to prove by clear and convincing evidence that the photo
array procedure used was impermissibly suggestive.  See Loserth, 963
S.W.2d at 772-73; Barley, 906 S.W.2d at 33; Delk, 855 S.W.2d at
706.  

Appellant concedes that the individuals in the photo array
were similar in appearance to himself except for their clothing.  Appellant
nonetheless asserts that the pre-trial identification procedure was
impermissibly suggestive because he had facial hair and Hidalgo=s assailant was
described in Officer Halliday=s report as not having facial hair.  A
photo array should depict persons of the same age, race, general skin color,
and height as the suspect.  Wilson v. State, 15 S.W.3d 544, 553 (Tex.
App.BDallas 1999, pet.
ref=d).  The fact that
participants in the array do not perfectly match the physical description of
the suspect does not render the lineup impermissibly suggestive.  See id. 
Therefore, the procedure used in this case was not impermissibly suggestive
because it included photographs of appellant and other individuals similar in
appearance who had facial hair when Officer Halliday=s report described
Hidalgo=s assailant as not
having facial hair.  








Appellant also contends that the photo array was
impermissibly suggestive because his picture showed him wearing a white muscle
shirt like the one the suspect was described as wearing.  It is permissible to
use a photo in an identification procedure showing a defendant wearing the same
or similar clothing to that described as being worn by the suspect.  See
Hudson v. State, No. 14-07-00888-CR, 2009 WL 196060, at *5 (Tex. App.BHouston [14th
Dist.] Jan. 29, 2009, no pet. h.) (mem. op., not designated for publication)
(defendant pictured wearing dark-colored hooded sweatshirt similar to those
worn by robbers; photo held not impermissibly suggestive); see also Smith
v. State, 930 S.W.2d 227, 228-29 (Tex. App.BBeaumont 1996,
pet. ref=d) (defendant was
only person pictured wearing street clothes similar to those robber was
described as wearing); Mungia v. State, 911 S.W.2d 164, 168 (Tex. App.BCorpus Christi
1995, no pet.) (defendant was only person pictured wearing dark shirt and
robber was described as wearing black shirt).  Therefore, the procedure used in
this case was not impermissibly suggestive because appellant was pictured
wearing a white muscle shirt like the one Hidalgo described his assailant as
wearing.

Appellant further contends that the photo array procedure
was suggestive because (1) Hidalgo was led to believe police had captured his
assailant; and (2) Officer Cowles did not explain to Hidalgo that the photo
array might not contain his assailant.  However, Hidalgo and Officer Cowles
both testified that Officer Cowles placed no pressure on Hidalgo to identify
anyone in the photo array and did not suggest appellant over any other
individuals featured in the array.  Hidalgo testified that he had no trouble
recognizing appellant in the photo array as his assailant.  Hidalgo also
testified that he identified appellant=s photo based upon
appellant=s facial appearance and not his clothing.  This
testimony provided the trial court with an adequate basis for overruling
appellant=s objections to Hidalgo=s identifications
of appellant as his assailant.  See Harris v. State, 827 S.W.2d 949, 960
(Tex. Crim. App. 1992) (en banc).

In light of the established case law addressing each of
appellant=s arguments, we conclude that appellant has failed to
produce clear and convincing evidence that the pre-trial identification
procedure used to identify appellant as Hidalgo=s assailant was
impermissibly suggestive.  See Loserth, 963 S.W.2d at 772-73; Barley,
906 S.W.2d at 33; Delk, 855 S.W.2d at 706.  Because appellant is unable
to satisfy this prong of the two-part test outlined in Loserth, we need
not and do not address the second prong of the test.  See Loserth, 963
S.W.2d at 772-73; Barley, 906 S.W.2d at 33.

We
overrule appellant=s issue regarding admission of Hidalgo=s out-of-court and in-court
identifications of appellant as his assailant.








II.        Legal and
Factual Sufficiency of Evidence

Appellant
also contends that the evidence was legally and factually insufficient to
support the jury=s finding that he was the person who committed the charged
offense.

A.        Legal Sufficiency

In
reviewing legal sufficiency of the evidence, an appellate court will examine
the evidence in the light most favorable to the State to determine whether any
rational finder of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
When reviewing legal sufficiency of the evidence, the court does not sit as a
thirteenth juror and may not re-evaluate the weight and credibility of the
record evidence or substitute its judgment for that of the fact finder.  Dewberry,
4 S.W.3d at 740.  Our legal sufficiency review considers evidence that was
properly and improperly admitted.  Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

Reconciliation
of conflicts in the evidence is within the fact finder=s exclusive province.  See Mosley
v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  The appellate court=s duty is not to reweigh the
evidence, but to serve as a final due process safeguard ensuring only the
rationality of the fact finder.  See Williams v. State, 937 S.W.2d 479,
483 (Tex. Crim. App. 1996).  An appellate court faced with a record of facts
that supports conflicting inferences must presume _ even if not obvious from the record _ that the finder of fact resolved any
such conflicts in favor of the prevailing party, and must defer to that
resolution.  Jackson, 443 U.S. at 326.








Officer
Cowles testified that Hidalgo identified appellant from a photo array as the
man who robbed him after being admonished that he should point someone out only
if that person was the robber.  Hidalgo testified that he had no trouble
recognizing appellant as his assailant when looking at the photo array. 
Hidalgo also testified that he identified appellant based on his facial
appearance rather than his clothing.  Hidalgo identified appellant in court as
his assailant.  Officer Walker testified that Shelton and Manning identified
appellant as Hidalgo=s assailant.  Viewing this evidence in the light most
favorable to the jury=s verdict, a rational fact finder could have found beyond a
reasonable doubt that appellant is the individual who committed the aggravated
robbery of Hidalgo.  See Jackson, 443 U.S. at 319; Dewberry, 4
S.W.3d at 740.

B.        Factual Sufficiency

When
conducting a factual sufficiency review, an appellate court must determine (1)
whether the evidence introduced to support the verdict is Aso weak@ that the fact finder=s verdict seems Aclearly wrong and manifestly unjust,@ and (2) whether, considering
conflicting evidence, the fact finder=s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  We view the evidence in a neutral
light in a factual sufficiency review.  Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000) (en banc).

An
appellate court should not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility of witness testimony.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002).  Due deference still must be given to
the fact finder=s determinations concerning the weight and credibility of the
evidence, and reversal of those determinations is only appropriate to prevent
the occurrence of a manifest injustice.  Martinez v. State, 129 S.W.3d
101, 106 (Tex. Crim. App. 2004).

In cases
based upon circumstantial evidence, it is not required that all facts point to
a defendant=s guilt; it is sufficient if the combined and cumulative force of all of
the incriminating circumstances warrants the conclusion of guilt.  See
Courson v. State, 160 S.W.3d 125, 128 (Tex. App.BFort Worth 2005, no pet.) (citing Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (en banc)).           








Appellant
highlights the following evidence in support of his contention that he is not
the individual who committed the aggravated robbery of Hidalgo: (1) Officer
Halliday=s police report describing Hidalgo=s assailant as having no facial hair;
(2) Shelton=s testimony that he likely was under the influence of drugs when he spoke
to Officer Walker and could not identify appellant as Hidalgo=s assailant; and (3) Davis=s testimony that she and appellant
were attending a church revival at the time of the robbery.  Appellant also
reiterates his argument that Hidalgo=s out-of-court and in-court
identifications were impermissibly tainted and unreliable. 

However,
the jury heard considerable testimony regarding whether the photo array and
subsequent identifications were fair and reliable, and it was free to make its
own determination regarding the weight and credibility of that evidence.  See
Vasquez, 67 S.W.3d at 236.  In addition, the record also contains
considerable evidence to support the jury=s finding that appellant committed
aggravated robbery: (1) Hidalgo positively identified appellant in a photo
array and in court as his assailant; (2) Officer Cowles testified that Hidalgo
identified appellant from a photo array as the man who robbed him after being
admonished that he should point someone out only if that person was the robber;
(3) Hidalgo testified that he had no trouble recognizing appellant as his
assailant when looking at the photo array and that he identified appellant
based on his facial appearance rather than his clothing; (4) Officer Walker
testified that Shelton and Manning pointed out appellant as Hidalgo=s assailant; and (5) Officer Walker
found a kitchen knife in appellant=s back pocket, which Hidalgo identified
in court as the one his assailant used.

Viewing
the evidence in this case in a neutral light, we conclude that it is factually
sufficient to justify the jury=s finding that appellant committed the aggravated robbery of
Hidalgo.  See Johnson, 23 S.W.3d at 11.  The jury=s finding is neither clearly wrong
nor manifestly unjust.  See Watson, 204 S.W.3d at 414-15; Martinez,
129 S.W.3d at 106.








We overrule appellant=s issue regarding
legal and factual sufficiency of the evidence to support the jury=s finding that he
was the person who committed the charged offense.

Conclusion

The
trial court=s judgment is affirmed.

 

 

/s/      William J. Boyce

Justice

 

 

 

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).