**Opinion filed September 15, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00079-CR
_____

## ZACHARY DUANE WILSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54092**

### M E M O R A N D U M   O P I N I O N

A jury found Appellant, Zachary Duane Wilson, guilty of the third-degree felony offense of evading arrest with a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2016). The jury assessed punishment at confinement for seven years in the Institutional Division of the Texas Department of Criminal Justice with an $8,500 fine. However, the jury found Appellant eligible for community supervision and recommended that the term of imprisonment be suspended. The

trial court suspended the imposition of the confinement portion of Appellant's sentence and placed him on community supervision for five years. In his sole issue on appeal, Appellant contends that the trial court erroneously admitted evidence of an extraneous offense during the guilt/innocence phase of trial. We modify and affirm.

*Background Facts*

While on patrol, Midland County Deputy Thomas Navarrete observed Appellant's vehicle traveling at a high rate of speed. Using his radar unit, Deputy Navarrete "clocked" Appellant's speed at 104 miles per hour. Deputy Navarrete turned his patrol car around to initiate a traffic stop for speeding, but Appellant "continued at a high rate of speed" and failed to stop at two stop signs. After a continued pursuit, Deputy Navarrete located Appellant's vehicle behind a residence and observed Appellant exiting from the driver's side. Deputy Navarrete placed handcuffs on Appellant and conducted a "pat-down" search that revealed a syringe in his back pocket. Appellant stated that it was a diabetic needle.

During an inventory search of the vehicle, Deputy Navarrete found "several other syringes inside there as well as a bottle with what appeared to have been fake urine." Appellant's trial counsel objected to this testimony on relevance grounds, and then he argued that the evidence was more prejudicial than probative and constituted improper propensity evidence. Prior to the trial court's ruling on the objection, Appellant's trial counsel asked that such testimony be struck from the record and that "[the jury] shouldn't consider that as part of evading arrest." The State responded that the evidence went to Appellant's motive to evade and told the trial court that it was "not going to go any further about what they found in the car." The trial court "rule[d] that it's relevant" and allowed the testimony.

2

At the charge conference, the trial court ruled that an instruction regarding extraneous offenses would remain in the charge after the State said that it did not "believe there was any type of evidence to support" such an instruction and that it did not "want to draw attention to [the evidence]." Appellant's trial counsel did not object to the extraneous offense language in the court's jury charge.

*Analysis*

In his sole issue, Appellant contends that the trial court committed reversible error when it admitted evidence of the purported fake urine. Appellant also asserts that the trial court's failure to provide a contemporaneous limiting instruction and its instruction on extraneous offenses in the jury charge compounded the alleged error.

*Admissibility of Evidence of Extraneous Offense*

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). An abuse of discretion occurs when the trial court's decision falls outside the zone of reasonable disagreement. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. Extraneous-offense evidence is generally admissible if (1) it is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and (2) the probative value of the evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. *See* TEX. R. EVID. 401, 403, 404(b);

3

*Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see also De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the extraneous evidence satisfies this two-prong test, a trial court's ruling is generally within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 344.

Rule 404(b) prohibits the admission of extraneous-offense evidence at the guilt/innocence phase of a trial to prove that a defendant committed the charged offense in conformity with bad character. *Devoe*, 354 S.W.3d at 469 (citing TEX. R. EVID. 404(b)). However, when extraneous-offense evidence has relevance apart from character conformity, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2); *see Devoe*, 354 S.W.3d at 469 (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). Additionally, one well-established rationale to admit evidence of extraneous offenses is to rebut a defensive theory that negates one of the elements of the offense. *De La Paz*, 279 S.W.3d at 343; *Martin*, 173 S.W.3d at 466.

The State sought to offer the evidence of the "fake urine" to show Appellant's "motive about why he could be running." In this regard, Appellant's questions of the venire members—regarding a delay by Deputy Navarrete in turning around and activating his overhead lights—indicated that one of Appellant's defensive strategies was to suggest that he was not intentionally fleeing. Trial counsel's questions to Deputy Navarrete, and his closing arguments, also focused on this defensive theory. Thus, the evidence that Appellant possessed "what appeared to be fake urine" in his vehicle was relevant to Appellant's possible motive for evading arrest. This testimony was relevant to at least two elements of the offense: Appellant's intent to flee and his knowledge that Deputy Navarrete was a peace officer. *See* PENAL § 38.04(a) ("A person commits an offense if he intentionally flees from a person he

4

knows is a peace officer . . . attempting lawfully to arrest or detain him.").

Accordingly, the trial court did not abuse its discretion in admitting the evidence

relating to the purported "fake urine" because it served a purpose other than being

character confirmatory evidence.

Under Rule 403, a trial court may exclude relevant evidence if its probative

value is substantially outweighed by the danger of "unfair prejudice, confusing the

issues, misleading the jury, undue delay, or needlessly presenting cumulative

evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim.

App. 2009). "Rule 403 favors admission of relevant evidence and carries a

presumption that relevant evidence will be more probative than prejudicial."

*Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347

S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly

prejudicial when it has the undue tendency to suggest an improper basis for reaching

a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347

S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court

is to reverse the trial court's judgment "rarely and only after a clear abuse of

discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting

*Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)). When

conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along
> with (2) the proponent's need for that evidence against (3) any tendency
> of the evidence to suggest [a] decision on an improper basis, (4) any
> tendency of the evidence to confuse or distract the jury from the main
> issues, (5) any tendency of the evidence to be given undue weight by a
> jury that has not been equipped to evaluate the probative force of the
> evidence, and (6) the likelihood that presentation of the evidence will
> consume an inordinate amount of time or merely repeat evidence
> already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* We have already addressed the relevance of the challenged evidence to show Appellant's motive for evading arrest. The evidence provided an explanation to the jury for why Appellant evaded Deputy Navarrete's attempt to pull him over.

With respect to the State's need for the evidence under the second *Gigliobianco* factor, we have noted that Appellant's trial counsel suggested a defensive theory during voir dire to the effect that Appellant did not know that Deputy Navarrete was trying to stop him. Thus, the challenged evidence served to rebut Appellant's defensive theory.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. The fifth factor focuses on the potential of the proffered evidence to mislead the jury.

Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence.

The State spent very little time in developing this evidence—it was a single question and answer. As with any extraneous offense, there is a concern that the evidence will distract the jury and permit it to convict the defendant on an improper basis. But here, the evidence of the fake urine was dissimilar to the charged offense of evading arrest. The record does not show that the brief testimony regarding this evidence had the potential to inflame the jury or impress the jury in any irrational way.

Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568 ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly . . . ."). Thus, the trial court did not abuse its discretion in admitting the evidence relating to the purported fake urine.

*Failure to Give Limiting Instruction*

To preserve a claim of error on a court's ruling to admit evidence without restriction, a party must request that the court "restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(b)(1); *see Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); *Ryder v. State*, 514 S.W.3d 391, 402–03 (Tex. App.—Amarillo 2017, pet. ref'd). The party that opposes the evidence has the burden of objecting and requesting a limiting instruction from the trial court

7

at the time the evidence is introduced. *Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) (burden on party opposing evidence to request limiting instruction, not the trial court to issue an instruction *sua sponte*, because failure to request could be part of counsel's trial strategy); *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001) (must be requested by opposing party at the time evidence presented); *see also Pugh v. State*, 639 S.W.3d 72, 98 (Tex. Crim. App. 2022) (burden on the parties, not the trial court). Failure to request a limiting instruction "at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge." *Williams*, 273 S.W.3d at 230; *see also Delgado*, 235 S.W.3d at 251.

Here, Appellant does not argue that trial counsel requested a limiting instruction from the court; he instead contends that, "where evidence of an extraneous offense is presented, the trial court should contemporaneously provide a limiting instruction to the jury." The State argues that Appellant's trial counsel never requested such an instruction. We agree with the State. As the opponent of the admission of such evidence, Appellant's trial counsel bore the burden to request a limiting instruction from the trial court. Appellant's request "to strike that from the record and that they shouldn't consider that as part of evading arrest" was made during his argument that the evidence should not be admitted under Texas Rules of Evidence 403 and 404(b). This request occurred outside of the jury's presence and prior to the trial court's ruling that the evidence was admissible. It did not constitute a request to the trial court to issue a limiting instruction to the jury once the evidence was admitted. As noted by the Court of Criminal Appeals in *Delgado*, trial counsel may have a trial strategy of not requesting a limiting instruction if he or she does not want to emphasize the evidence. 235 S.W.3d at 250; *see Pugh*, 639 S.W.3d at 98 (citing *Delgado*). Because Appellant did not request a contemporaneous limiting

instruction, he did not preserve the issue for appellate review. *See* TEX. R. EVID. 105(b)(1).

If a party timely requests a limiting instruction, however, the trial court must contemporaneously provide one to the jury when the evidence is admitted. *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996). A trial court's failure to give a contemporaneous instruction following a timely, proper request for one is subject to a harmless error analysis. *Jones v. State*, 944 S.W.2d 642, 653–54 (Tex. Crim. App. 1996); *see also Gonzalez v. State*, 541 S.W.3d 306, 313 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Because failure to give a limiting instruction under Rule 105 constitutes nonconstitutional error, we disregard such an error if it "does not affect substantial rights." TEX. R. APP. P. 44.2(b); *see Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). An error does not affect a defendant's substantial rights if, after examining the record as a whole, the appellate court has fair assurance that "the error did not influence the jury, or had but a slight effect." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). To make this determination, we consider: "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id.*

Even if Appellant's statement constituted a request for a contemporaneous limiting instruction, any error by the trial court in failing to give it was harmless. First, the testimony about the purported fake urine was brief. Specifically, Deputy Navarrete[1] did not expand on the purported fake urine, explain why a person may have fake urine, or even indicate to the jury that possession of fake urine was a crime. Furthermore, the State did not emphasize Appellant's possession of the purported

---

[1]Deputy Navarrete was the only witness that testified at trial.

fake urine because the prosecutors did not reference it in their closing arguments. Accordingly, even if the trial court had erred in failing to give a contemporaneous limiting instruction upon trial counsel's request, such error was harmless.

*Jury Charge Paragraph Regarding Extraneous Offenses*

Appellant also contends that the trial court gave an erroneous instruction on extraneous offenses in the charge of the court. The court gave the following instruction:

> If there was evidence or testimony admitted before you that the Defendant was previously charged and convicted of an offense, or any other bad conduct, you cannot consider such evidence, if any, for any purpose unless you find and believe beyond a reasonable doubt that the Defendant was the person so charged and convicted, and then you may only consider such for the purpose of aiding you, if it does, in passing upon the credibility of the Defendant as a witness and the weight to be given the testimony of the Defendant and for no other purpose. You are further instructed that you cannot consider such evidence as any evidence of the Defendant's character in order to show that the Defendant acted in conformity therewith or as any evidence of the Defendant's guilt.

Appellant contends that this instruction was erroneous because he did not testify at trial. However, Appellant did not object to this portion of the jury charge.

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871

10

S.W.2d at 731–32. If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Because Appellant's trial counsel did not object to the jury charge, reversal is required only if the error results in egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171. In *Almanza*, the Texas Court of Criminal Appeals outlined four factors that a reviewing court should consider when determining whether a jury-charge error resulted in egregious harm: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Villarreal*, 453 S.W.3d at 433.

As an initial matter, because Appellant's trial counsel did not request a limiting instruction at the time the evidence was admitted, the evidence was admitted for all purposes and the trial court was not required to provide a limiting instruction in its jury charge. *See Delgado*, 235 S.W.3d at 253; *Hammock*, 46 S.W.3d at 895.

11

However, in its charge, the trial court did provide an instruction, albeit an erroneous one, relating to extraneous offenses. First, the extraneous offense charge refers to "charges and convictions." However, no evidence of charges and convictions exists in the guilt/innocence phase of Appellant's trial. Second, the charge directs the jury that, if such evidence does exist, the jury can only consider it to aid the jury in determining the credibility of the defendant during his testimony. Appellant did not testify at trial. Accordingly, the extraneous offense paragraph in the trial court's charge during the guilt/innocence phase contained some errors.[2]

Appellant argues that he suffered egregious harm because "the language in the trial court's charge to the jury was so erroneous and incomplete that it served only to confuse the jury." We disagree.

First, under *Almanza*, we consider the charge itself. The paragraph at issue instructed the jury to limit its consideration of extraneous offenses "[*i*]*f* there was evidence or testimony admitted . . . that *the Defendant was previously charged and convicted*" (emphasis added). We presume the jury read and followed the trial court's charge. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We

---

[2]The correct charge is set out in Comm. on Pattern Jury Charges, State Bar of Texas, TEXAS PATTERN JURY CHARGES: GENERAL, EVIDENTIARY & ANCILLARY INSTRUCTIONS PJC 3.1 (2018) (Instruction—Limited Use of Evidence—Uncharged "Bad Acts"), which provides as follows:

During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment. [*If requested by a party, include judge's description of specific acts.*] The state offered the evidence to show that the defendant [*describe purpose*]. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.

Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purpose I have described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purpose I have described. To consider this evidence for any other purpose would be improper.

(Emphasis in original).

generally presume the jury follows the trial court's instructions in the manner presented."). As such, because the charge relates to charges and convictions and the jury did not receive any evidence of any charges and convictions in the guilt/innocence phase, the jury could have found the instruction inapplicable to Appellant's case. Additionally, the jury may have discounted the erroneous charge because Appellant did not testify at trial. But more importantly, the charge given by the trial court concluded with the following sentence: "You are further instructed that you cannot consider such evidence as any evidence of the Defendant's character in order to show that the Defendant acted in conformity therewith or as any evidence of the Defendant's guilt." This portion of the charge is, in essence, the substance of the correct charge set out in the Texas Pattern Jury Charges. Thus, in reviewing the jury charge as a whole, we find that this factor does not weigh in favor of a finding of egregious harm.

Next, we examine the state of the evidence. During the guilt/innocence phase, the State called one witness, Deputy Navarrete, and admitted three exhibits into evidence: a dashboard camera recording, a body camera recording, and a map of Appellant's route during the evading offense. Deputy Navarrete testified at length regarding his pursuit and investigation of Appellant but only briefly mentioned the items found during an inventory search of Appellant's vehicle. Specifically, the testimony related to the bottle of purported fake urine amounted to approximately four lines of his entire testimony while on direct examination. In addition, as stated above, no context was given regarding the bottle of purported fake urine seen on the dashboard camera footage aside from the fact that it was "what [the State and Deputy Navarrete] talked about earlier" when Deputy Navarrete was "doing a search of the contents that were inside the vehicle." The State did not emphasize or even show the bottle of purported fake urine during its publication of the body camera footage.

13

Instead, Deputy Navarrete's testimony focused on, among other evidence, Appellant's statements, speed, and distance; whether Appellant knew the person whose yard Appellant parked in after he evaded; and whether Deputy Navarrete heard any music coming from Appellant's vehicle. Furthermore, Deputy Navarrete did not say that what he found was illegal. While on cross-examination, the following exchange occurred:

> Q: Okay. All right. So at that point then you said that you found needles and fake pee and all this stuff in his car. Did you find anything illegal in his car?
>
> A: I found a needle on his person.
>
> Q: Is that illegal?
>
> A: Not in and of itself.
>
> Q: Can you confirm or deny that it was a diabetic needle?
>
> A: Confirm nor deny nor did I charge him with it.

Accordingly, the state of the evidence also weighs against a finding of egregious harm. *Cf. Villareal*, 453 S.W.3d 429 at 440 (concluding that the second *Almanza* factor "weigh[ed] substantially against a finding of egregious harm" based in part on lack of evidence to support the omitted presumption).

Third, we consider the arguments of counsel. In its closing statements, the State did not mention or allude to the purported fake urine. In fact, the State discussed possible motives for evading in its closing statement without referring to the items found in Appellant's vehicle. Conversely, Appellant's trial counsel argued in its closing statement that the State was "trying to distract [the jury] with other things like . . . this pee test (sic) and there's needles . . . [t]o make you think he's some bad guy." Importantly, however, this argument was not the crux of trial counsel's defense strategy. Instead, Appellant's trial counsel primarily argued that the State had not met its burden of proof and that statements made by Deputy

14

Navarrete during his testimony were contradictory or speculative. We conclude that the arguments of counsel weigh against a finding that egregious harm occurred. *Cf. Villareal*, 453 S.W.3d at 440 (omission of jury instruction only affected defendant's "secondary defensive theory" and therefore did not "touch upon a 'vital aspect' of defendant's case.")

Lastly, we consider any other relevant information revealed by the record. In this case, the jury submitted one note to the trial court during its deliberations in the guilt/innocence phase: it asked whether Appellant received *Miranda* warnings.[3] The absence of a note indicating juror confusion regarding the extraneous offense instruction weighs against a finding of egregious harm. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (finding persuasive the absence of a note from the jury "expressing confusion" regarding the instruction at issue).

We hold that Appellant did not suffer egregious harm based on the error in the trial court's jury charge. We therefore overrule Appellant's sole issue.

*Court-Appointed Attorney's Fees*

Although not raised by Appellant, the State asserts that the district clerk's assessment of court appointed attorney's fees is in error. On this issue, we note that the trial court ordered Appellant to pay "all costs" of prosecution, including court costs and attorney's fees incurred by his court-appointed attorney within its judgment of conviction and grant of community supervision. However, Appellant is an indigent defendant, and no evidence was presented that his financial circumstances changed following the trial court's order finding him indigent.

An indigent defendant cannot be taxed the cost of services rendered by his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Mayer v. State*, 309

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2021); *see also* CRIM. PROC. art. 42A.301(b)(10) (repayment of attorney's fees as a condition of community supervision). The Texas Court of Criminal Appeals has held that the trial court must find that the defendant had the ability to repay court-appointed attorney's fees prior to assessing such fees against an indigent defendant. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *see also Mayer*, 309 S.W.3d at 556 ("[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). Further, a "defendant who is determined by the [trial] court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Cates*, 402 S.W.3d at 251 (quoting CRIM. PROC. art. 26.04(p)).

On May 21, 2020, Appellant filed an affidavit of indigence certifying that he did not have the necessary funds to hire an attorney for his defense. The trial court determined that Appellant was indigent and appointed counsel to represent Appellant in all proceedings in the case. Subsequent to this appointment, the trial court did not receive evidence, nor did it issue a finding, that Appellant had the ability to pay any portion of the attorney's fees that were incurred by his court-appointed attorney. As such, nothing in the record indicates that (1) Appellant is no longer indigent or (2) the trial court made a subsequent determination that Appellant's financial circumstances had materially changed or that he had the financial resources or ability to pay the court-appointed attorney's fees of $8,750 assessed against him.

Because the trial court determined that Appellant was indigent and because nothing in the record from Appellant's trial demonstrated that he was able to pay all

or part of his attorney's fees, the trial court erred by ordering the repayment of those attorney's fees. *See Cates*, 402 S.W.3d at 252; *Mayer*, 309 S.W.3d at 555–56. As such, the trial court's judgment and the district clerk's bill of costs erroneously include attorney's fees as costs.

*This Court's Ruling*

We modify the trial court's judgment and the district clerk's bill of costs to delete (1) the court-appointed attorney's fees that were ordered to be assessed against Appellant and (2) the trial court's requirement that Appellant pay such fees. As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


September 15, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.